1  Eric Slocum Sparks
   Arizona State Bar No. 11726
2  LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
   110 South Church Avenue #2270
3  Tucson, Arizona 85701
   Telephone (520) 623-8330
4  Facsimile (520) 623-9157
   eric@ericslocumsparkspc.com
5
   Attorney for Debtors
6
                 IN THE UNITED STATES BANKRUPTCY COURT
7
                      FOR THE DISTRICT OF ARIZONA
8
   In re:                          )
9                                  )
   NIMBUS BREWING COMPANY, LLC,    )    No. 4:12-bk-08122-EWH
10                                 )
                                   )    Chapter 11
11                                 )
                                   )    NOTICE OF SUBMISSION OF
12                                 )    DEBTOR'S FIRST DISCLOSURE
                                   )    STATEMENT FOR ITS
13                                 )    FIRST PLAN OF REORGANIZATION
                                   )    DATED December 18, 2012
14 _____)

15        Nimbus Brewing Company, LLC, (hereinafter "the Debtor"), by and through its counsel

16 undersigned, submits this proposed First Disclosure Statement attached hereto and by reference

17 incorporated herein (hereinafter "the Disclosure Statement") in connection with the "Debtor's First Plan

18 of Reorganization" attached as Exhibit "A" hereto December 18, 2012 (hereinafter "the Plan").  The

19 Disclosure Statement is submitted in compliance with 11 U.S.C. Section 1125 and Bankruptcy Rule

20 3017. It has not been approved by the Bankruptcy Court and is filed solely to enable the Court and

21 parties in interest to evaluate the adequacy of the information contained herein as required of the

22 Bankruptcy Code.  Moreover, the Disclosure Statement refers to information contained herein as

23 required by the Bankruptcy Code. The Disclosure Statement refers to information and facts that the

24 Debtor anticipates will be accurate or will occur on or prior to the date of the hearing to consider the

25 Disclosure Statement. Therefore, certain information and facts contained in the Disclosure Statement

26 may not be completely accurate as of the date hereof.

27        The Debtor believes that a form of Disclosure Statement in substantially the form as that which

28                                            1

is attached hereto contains information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the Debtor, that would enable a reasonable investor, typical of the holders of claims and interests in each class of claims and interest in the Plan, to make an informed judgment about the Plan. Nevertheless, all readers are cautioned that the Debtor may file further modifications of the Plan and of the Disclosure Statement prior to the hearing to consider the Disclosure Statement.

*THE FILING AND ANY DISSEMINATION OF THE DISCLOSURE STATEMENT*
*IS NOT A SOLICITATION OF VOTES ACCEPTING OR REJECTING*
*THE PLAN DESCRIBED THEREIN.*

DATED: December 18, 2012

LAW OFFICES OF
*ERIC SLOCUM SPARKS, P.C.*


/s/ Sparks #11726
Eric Slocum Sparks
Attorney for Debtor

2

# TABLE OF CONTENTS

FOR
DISCLOSURE STATEMENT DATED
December 18, 2012

| SECTION I | INTRODUCTION | 1 |
|---|---|---|
| 1.1 | Purpose of This Disclosure Statement | 1 |
| 1.2 | Confirmation Hearing and Voting Instructions | 3 |
| 1.3 | Voting | 4 |
| SECTION II | HISTORY OF DEBTOR AND FACTORS LEADING TO THE FILING OF THE CHAPTER 11 | 7 |
| 2.1 | Circumstances that Gave Rise to the Filing of the Bankruptcy Petition | 7 |
| 2.2 | Current Management | 9 |
| 2.3 | The Anticipated Future of the Debtor | 9 |
| 2.4 | Causes of Action | 9 |
| 2.5 | New Plan of Reorganization | 9 |
| 2.6 | The Condition and Performance of the Debtor while in Chapter 11 | 9 |
| 2.7 | The Accounting and Valuation Methods Used to Produce the Financial Information in the Disclosure Statement | 9 |
| 2.8 | The Existence, Likelihood and Possible Success of Non-bankruptcy Litigation | 9 |
| SECTION III | INCOME PROJECTIONS OF THE PROPERTY | 10 |
| SECTION IV | SUMMARY OF PLAN OF REORGANIZATION | 10 |
| 4.1 | Plan | 10 |
| 4.2 | Segregation of Classes | 10 |
| 4.3 | Value of Secured Claims | 11 |
| 4.4 | Cash Collateral Litigation | 11 |
| 4.5 | Description of Assets - Values | 11 |
| 4.6 | Anticipated Future of Debtor | 11 |
| 4.7 | Source of Information | 11 |
| 4.8 | Condition and Performance of Debtor in Chapter 11 | 11 |
| 4.9 | Information Regarding Claims Against Estate | 12 |
| 4.10 | Liquidation Analysis | 12 |

| | | |
|---|---|---:|
| 4.11 | Future Management of Debtor | 12 |
| 4.12 | Non-Bankruptcy Litigation | |
| 4.13 | Avoidable Transfers | 12 |
| 4.14 | Accounts Receivable | 12 |
| 4.15 | Affiliates | 12 |
| 4.16 | New Capital Contribution | 12 |
| SECTION V | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | 12 |
| 5.1 | Class 1 - Administrative Claims | 13 |
| 5.2 | Class 2 - Claims of Governmental Units | 14 |
| 5.3 | Class 3 - Secured Ad Valorem Real Property Tax Claims | 14 |
| 5.4 | Class 4 - Secured Statutory Claims of Pima County | 15 |
| 5.5 | Class 5 - Secured Claim of Rewards Network Establishment | 15 |
| 5.6 | Class 6 - Secured Claim of BMT Leasing Inc. | 16 |
| 5.7 | Class 7 - Secured Claim of Nationwide Funding, LLC | 16 |
| 5.8 | Class 8 - Secured Claim of US Bancorp | 16 |
| 5.9 | Class 9 - Secured Claim of AEL Financial LLC | 17 |
| 5.10 | Class 10 - Secured Claim of Corp Service Company | 17 |
| 5.11 | Class 11 - Secured Claim of National City Commercial Cap | 17 |
| 5.12 | Class 12 - Unsecured Deficiency Claims and Unsecured Claims | 18 |
| 5.13 | Class 13 - Contingent, Unliquidated and Disputed Claims | 18 |
| 5.14 | Class 14 - Claims of Participating Investors | 18 |
| 5.15 | Class 15 - Interest of Equity Holders | 18 |
| SECTION VI | POST-CONFIRMATION MANAGEMENT | 19 |
| SECTION VII | INCOME TAX CONSEQUENCES OF REORGANIZATION | 19 |
| 7.1 | Disclaimer | 19 |
| 7.2 | Consummation | 19 |
| SECTION VIII | FEASIBILITY | 20 |
| SECTION IX | LIQUIDATION ANALYSIS | 21 |
| SECTION X | ACCEPTANCE AND CONFIRMATION | 21 |
| 10.1 | What is Necessary for Court Approval of a Plan | 21 |
| 10.2 | Alternatives to the Plan | 22 |

| | 10.3 | Specific Consideration in Voting | 23 |
|---|---|---|---|
| | 10.4 | Risk Factors | 24 |
| | 10.5 | Disclosure Required by the Code | 24 |
| SECTION XI | | OTHER PROVISIONS OF THE PLAN | 24 |
| | 11.1 | Retention of Jurisdiction | 24 |
| | 11.2 | Retention of Causes of Action | 25 |
| | 11.3 | Retention or Rejection of Executory Contracts and Leases | 25 |
| | 11.4 | Amendments to Plan | 25 |
| | 11.5 | Offer, Issuance and Resale of Plan Securities | 25 |
| | 11.6 | Provisions for Filing Reports and Payments of Fees to US Trustee | 26 |
| SECTION XII | | RECOMMENDATION OF THE DEBTOR | 26 |
| SECTION XIII | | CONCLUSION | 27 |

## LIST OF EXHIBITS

| EXHIBIT A | First Plan of Reorganization Dated December 18, 2012 and filed as a separate document |
|---|---|
| EXHIBIT B | Ballot |
| EXHIBIT C | Liquidation Analysis |
| EXHIBIT D | Anticipated Income and Expense/Sources and Uses of Cash |

Eric Slocum Sparks
Arizona State Bar No. 11726
LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue #2270
Tucson, Arizona 85701-3031
Telephone (520) 623-8330
Facsimile (520) 623-9157
law@ericslocumsparkspc.com

Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) |
| | ) |
| NIMBUS BREWING COMPANY, LLC, | ) No. 4:12-bk-08122-EWH |
| | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) DEBTOR'S FIRST DISCLOSURE |
| | ) STATEMENT DATED December 18, 2012 |
| | ) FOR ITS FIRST PLAN OF |
| | ) REORGANIZATION |
| | ) DATED December 18, 2012 |

Nimbus Crewing Company, LLC, (hereinafter "the Debtor"), through its undersigned attorney, hereby submits its First Disclosure Statement dated December 18, 2012 for its First Plan of Reorganization dated December 18, 2012.

## *SECTION I*

### *Introduction*

1.1. <u>Purpose of this Disclosure Statement</u>: the Debtor commenced reorganization proceedings with the filing of a Voluntary Petition on April 17, 2012 under Chapter 11 of the United States Bankruptcy Code, as amended (the "Bankruptcy Code").

A DISCLOSURE STATEMENT FOR THE PLAN OF REORGANIZATION FOR THE DEBTOR WAS FILED BY THE DEBTOR, WHICH DESCRIBES THE TERMS AND PROVISIONS OF THE PLAN OF REORGANIZATION OF THE DEBTOR DATED December 18, 2012.

[After notice and hearing, the Disclosure Statement was approved by the Bankruptcy Court as containing adequate information and sufficient detail to enable the holders of claims against or interest

1

in the debtor to make an informed judgment about the merits of approving the Plan.]

The purpose of this Disclosure Statement is to provide holders of claims against or interest in the Debtor with sufficient information about the Debtor and the Plan to enable holders of claims against or interest in the Debtor to make an informed judgment on the merits of the Plan and a decision whether to approve or reject the Plan.

Certain materials contained in this Disclosure Statement are taken directly from other readily accessible instruments or are digests of other instruments. While the Debtor has made every effort to retain the meaning of such other instruments or the portions transposed, you are urged that any reliance on the contents of such other instruments should be predicated on a thorough review of the instruments themselves.

THE PLAN ACCOMPANIES THIS DISCLOSURE STATEMENT AS *"EXHIBIT A"*. THE DEFINITIONS CONTAINED IN THE PLAN APPLY TO THIS DISCLOSURE STATEMENT AND EACH RECIPIENT THEREOF IS URGED TO REVIEW THE PROVISIONS OF THE PLAN FULLY PRIOR TO REVIEWING THIS STATEMENT.

The Debtor believes the contents of this Disclosure Statement satisfies the requirements adopted by this Court *In re A.C. Williams Co., 25 B.R. 173 (Bankr N.D. Ohio, 1982), In re Cardinal Congregate I, 121 B.R. 760 (Bankr S.D. Ohio, 1982)*. Those elements are as follows:

1. The circumstances that gave rise to the filing of the bankruptcy petition;

2. A complete description of the available assets and their value;

3. The anticipated future of the Debtor;

4. The source of the information provided in the Disclosure Statement;

5. A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set for the in the disclosure statement;

6. The condition and performance of the debtor while in Chapter 11;

7. Information regarding claims against the estate;

8. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

9. The accounting and valuation methods used to produce the financial information in the

2

disclosure statement;

10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

11. A summary of the plan of reorganization;

12. An estimate of all administrative expenses, including attorneys fees and accountant's fees;

13. The collectibility of any accounts receivable;

14. Any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

15. Information relevant to the risks being taken by the creditors and interest holders;

16. The actual or projected value that can be obtained from avoidable transfers;

17. The existence , likelihood and possible success of non-bankruptcy litigation;

18. The tax consequences of the plan; and

19. The relationship of the debtor with affiliates.

1.2 <u>Confirmation Hearing and Voting Instructions</u>: The Bankruptcy Court will set/has set_____, 2013, at _____ __.m. for a hearing on the confirmation of the Plan. Claimants and interest holders may vote on the Plan by filling out and mailing the accompanying Ballot for Accepting or Rejecting the Plan to:

Clerk of the United States Bankruptcy Court
38 South Scott Avenue
Tucson, Arizona 85701

with a copy to:

Eric Slocum Sparks, Esq.
ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue, #2270
Tucson, Arizona 85701.

The Bankruptcy Court may confirm only one plan in this case. The plan confirmed in the Bankruptcy Court must meet the requirements contained in the Bankruptcy Code.

Only the Debtor or the Debtor's representatives may solicit your vote. The cost of any solicitation by the Debtor will be borne by the Debtor. No other additional compensation shall be

3

received by any party for any solicitation other than as disclosed to the Bankruptcy Court.

1.3    Voting.  If you are in one of the classes of creditors or investors whose interests are affected by the Plan (see "Summary of the Plan" below), it is important that you vote.  If you fail to do so, your rights may be jeopardized.

To vote to accept or reject the Plan, creditors and investors of the Reorganized Debtor in any of the impaired classes (see the "Summary of the Plan" contained herein and the copy of the Plan attached hereto) should indicated their acceptance or rejection on the appropriate Ballot.  A sample ballot is attached as **Exhibit "B"**.  Any creditors or investors holding claims in more than on impaired class must file one Ballot for each such class.  Additional Ballots may be obtained by proper written request to:

Eric Slocum Sparks, Esq.
ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue, #2270
Tucson, Arizona 85701
(520) 623-8330
Fax: (520) 623-9157
email: eric@ericslocumsparkspc.com

attorney for the Debtor.

You are, therefore, urged to fill in, date, sign and promptly mail the enclosed Ballot  furnished to you.  PLEASE BE SURE TO PROPERLY COMPLETE THE FORM AND LEGIBLY IDENTIFY THE NAME OF THE CLAIMANT OR INTEREST HOLDER.

EXECUTED BALLOTS MUST BE RECEIVED ON OR BEFORE THE RETURN DATE SET FORTH IN THE BALLOT.

SINCE MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THAT THE BALLOT OR BALLOTS BE MAILED OR DELIVERED WELL IN ADVANCE OF THE DATE SPECIFIED.  ANY BALLOTS RECEIVED AFTER THAT DATE MAY NOT BE INCLUDED IN ANY CALCULATION TO DETERMINE WHETHER THE CREDITORS AND INTEREST HOLDERS HAVE VOTED TO ACCEPT OR REJECT THE PLAN.

THIS IS A SOLICITATION BY THE DEBTOR ONLY AND IS NOT A SOLICITATION BY THE ATTORNEYS OR ACCOUNTANTS FOR THE DEBTOR, AND THE REPRESENTATIONS MADE HEREIN ARE THOSE OF THE DEBTOR AND NOT OF SUCH ATTORNEYS OR ACCOUNTANTS, EXCEPT AS MAY BE OTHERWISE INDICATED.

4

As a claimant or interest holder, your vote is important. The Bankruptcy Court cannot consider Confirmation of the Plan until acceptance thereof has been obtained pursuant to the affirmative vote of impaired claimants by classes who hold at least two-thirds (2/3) in amount and more than one-half (½) in number of the allowed claims by class voting on the Plan. If an impaired claimant or interest holder who is entitled to vote does not, such failure to vote will bear upon the outcome.

Whether a creditor or interest holder votes on the Plan or not, or whether the creditor or interest holder votes at all, such party will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities of creditors and interest holders and is confirmed by the Bankruptcy Court. Allowance of a claim or interest for voting purposes does not necessarily mean that all or a portion of the claim or interest will be allowed or disallowed for distribution purposes.

Following acceptance, the Bankruptcy Court will hold a hearing on the confirmation of the Plan and will enter an order of confirmation with respect to the Plan if it finds that, among other things, all payments to be made by the Debtor in connection with the case or Plan have been disclosed to the Bankruptcy Court, the identity and affiliation of post-confirmation management of the Reorganized Debtor has been fully disclosed, each class of claimants and interest holders has accepted the Plan or is not impaired by the provisions thereof, and that confirmation is not likely to be followed by the liquidation or need for further financial reorganization of the Reorganized Debtor.

In the event that the requisite acceptance of impaired classes of claims and interests are not obtained, pursuant to Section 1129 (b)(1) of the Bankruptcy Code, the Bankruptcy Court may nevertheless confirm the Plan upon the request of the proponent of the Plan if the Bankruptcy Court finds that the Plan does not discriminate unfairly and accords fair and equitable treatment to the class rejecting it.

At the hearing on confirmation of the Plan, the Bankruptcy Court will hear any timely filed objections from a claimant or interest holder to confirmation of the Plan.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR WHICH MAY BE MADE CONCERNING THE DEBTOR, THE VALUE OF ITS ASSETS, OR THE REORGANIZED DEBTOR ARE THE REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT. EXCEPT AS NOTED, THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE

5

STATEMENT HAS NOT BEEN SUBJECTED TO AN AUDIT BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT. ALL FINANCIAL RECORDS OF THE DEBTOR ARE MAINTAINED ON AN ACCRUAL BASIS. ALL EXPENSES AND INCOME ARE ON AN CASH BASIS. SOME OF THE ACCOUNTING/FINANCIAL WORK FOR THE DEBTOR MAY BE PERFORMED BY AN ACCOUNTANT OF THE DEBTOR. FOR THAT REASON, THE DEBTOR IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED. NO REPRESENTATIONS OR ASSURANCES CONCERNING THE DEBTOR (INCLUDING, WITHOUT LIMITATION, ITS FUTURE BUSINESS OPERATIONS) OR THE PLAN ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE WHICH ARE OTHER THAN HEREIN CONTAINED SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN. NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THIS DISCLOSURE STATEMENT SHALL, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THIS DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED. THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED IN IT SHALL CONSTITUTE, OR BE DEEMED CONCLUSIVE ADVICE ON, THE TAX OR OTHER LEGAL EFFECTS OF ANY REORGANIZATION ON HOLDERS OF CLAIMS OR

6

INTERESTS IN CONNECTION WITH SUCH REORGANIZATION.

THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY ORDER OF THE BANKRUPTCY COURT, DATED _____, 2013, AS CONTAINING INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE A REASONABLE, HYPOTHETICAL INVESTOR TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT, HOWEVER, DOES NOT CONSTITUTE A RECOMMENDATION BY THE BANKRUPTCY COURT EITHER FOR OR AGAINST THE PLAN.

IN ORDER TO BE CONSIDERED FOR PURPOSES OF SATISFYING THE BANKRUPTCY CODE REQUIREMENTS, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS INDICATED ON THE BALLOT NO LATER THAN 5:00 P.M. ON THE ___ DAY OF _____, 2013.

A BALLOT ACCOMPANIES THIS DISCLOSURE STATEMENT FOR USE IN VOTING OF THE PLAN.

## SECTION II

*History of Debtor and Factors Leading*
*to the Filing of the Chapter 11*

_____2.1    Circumstances that Gave Rise to the Filing of the Bankruptcy Petition.

Nimbus Brewing Company, LLC ("Nimbus") the largest brewing company in Arizona is a long-time business that has suffered financial setbacks in recent years due in larger part to the downturn in the local, regional, and national economy and other business difficulties.

2001 marked the arrival of our new state of the art 35 barrel high pressure steam fired brew house manufactured by JV Northwest. It is the crowning accomplishment in Nimbus Brewing Company's major brewery expansion that began in June of 2000 with the arrival of James Counts, Managing Partner of Nimbus Brewing Company. With almost 1,000 barrels of fermenting capacity, we boast an annual production capacity of 22,500 barrels (about 45,000 kegs) of beer. The Tucson based Nimbus Brewing Company now owns the distinction of being the largest brewery based in the state of Arizona. Our three 150 barrel fermenters standing almost 30 feet tall and each holding almost 5,000 gallons of beer are a sight to behold for any lover of quality micro-brewed beers and are

7

1   a testament to the demand of our products throughout Arizona and the surrounding region.

2       Scott Schwartz, the head Nimbus brewer monitors all aspects of the brewing process, and has

3   garnered multiple awards for Nimbus Brewing Company, including best local brew and best beer on

4   tap in the best of Tucson competition for five consecutive years. In addition, Nimbus was named best

5   micro brewery by the Arizona Daily Star and the Arizona Republic and was selected four years in a

6   row to attend the prestigious Oregon Brew Festival each time winning with our exceptional English

7   strong monkeyshine ale. Our ales have won many individual awards including silver medal for our

8   oatmeal stout, red, pale and English strong monkeyshine in the world beer cup. Our Belgian white

9   won best in show at the Las Vegas Brewfest, and a regional bronze medal in the United State Beer

10  Tasting Championships. At the United State Beer Tasting Championships, Nimbus was also proud to

11  receive a regional gold medal and silver national medal for its Pale Ale. With awards and accolades

12  too many to list, we are fortunate to have Scott at the helm of production, as are thousands of people

13  who enjoy his mastery of the art of brewing on a daily basis.

14      Nimbus is a brewery operation with an associated restaurant/pub with the same name. In the

15  summer of 2011, at the lowest point of the year for the local restaurant trade, Nimbus' brewing

16  operations essentially were halted when Southwest Gas installed a faulty gas meter. This caused

17  problems in operations of the high pressure steam boiler, which powered the brewing operations, as

18  the boiler was not getting adequate gas supply from the faulty meter. This resulted in debtor being

19  unable to brew beer to complete existing orders. After may weeks of attempting to work with

20  Southwest Gas to verify the cause of the problem, it was determined that an incorrect size of gas

21  meter had been installed. Nimbus Brewing company, LLC was unable to produce product for a total

22  of nine weeks. This led to the loss of multiple business accounts as the brewery was unable to fill

23  orders and in a substantially reduced cash flow to debtor.

24      Nimbus spent several months attempting to work with the loss mitigation department of

25  Southwest Gas to try to recoup some of these losses, some of which were substantial. It took months

26  for the brewery to begin to get production back up to its previous production levels. Nimbus

27  attempted to cover these losses from their cash reserves in the bank and to keep the business

28  operating and keep all employees on staff, but ultimately and prior to a Southwest Gas settlement,

8

Nimbus had exhausted the cash reserved of the business and was forced to seek the assistance of the courts in reorganizing the obligations of the company.

2.2 <u>Current Management</u>: The Debtor is currently managed by James C Counts..

2.3 <u>The Anticipated Future of the Debtor</u>: the future looks good for Nimbus, with lowered overhead due to the restructuring of business debt and being released from various legal obligations, due to the period of its inability to produce Nimbus products. Confirmation will enable the company to utilize the improved cash flow in a prudent business manner including expansion into Georgia, New Mexico and California. This will include setting aside money each month for contingencies such as repairs and unforseen events at the brewery.

2.4 <u>Causes of Action</u>: The Debtor has a cause of action against New Way Tucson Restaurant, L.L.C. and DonBrandon, L.L.C. in excess of $100,000.

2.5 <u>New Plan of Reorganization</u>: The Debtor has filed a Plan which will allow it to retain the property and pay creditors more money than creditors would receive from a liquidation of the property. See liquidation analysis attached hereto as **Exhibit "C"**.

2.6. <u>The Condition and Performance of the Debtor While in Chapter 11</u>: Nimbus is currently producing income from its operations of the business. The Profits are currently back to pre-Southwest Gas Incident levels and now projected to grow by 5%-8% annually as new markets are opened for Nimbus products.

2.7 <u>The Accounting and Valuation Methods Used to Produce the Financial Information in the Disclosure Statement</u>: The accounting process is conducted using generally accepted accounting principles. Accounting information is furnished by Nimbus and is presented on a cash basis. <u>Inventory and Assets</u>: The post-petition income are assets of the business. Nimbus' assets are listed in Exhibit A. Management of Nimbus will remain with Debtor's principle James Counts.

2.8 <u>The Existence, Likelihood and Possible Success of Non-bankruptcy Litigation</u>: Debtor has retained the firm of Karp & Weiss but they were not able to reach an agreement over monies owed to the debtor. Debtor believes it has a cause of action against New Way Tucson Restaurant, L.L.C. and DonBrandon, L.L.C. which it shall pursue.

9

## *SECTION III*

### *Income Projections of the Property*

A proforma statement of the **Anticipated Income and Expenses and Schedule of Sources and Uses of Cash** relating to payments to creditors under the plan are attached hereto, as **Exhibit "D"**.

The Debtor has derived this information from the principal of the debtor, James Counts. Mr. Counts is in a personal Chapter 11 due to personal guarantees executed on behalf of the debtor.

## *SECTION IV*

### *Summary of Plan of Reorganization*

THE FOLLOWING IS A BRIEF SUMMARY OF CERTAIN PROVISIONS OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. THE SUMMARY DOES NOT PURPORT TO BE COMPLETE. CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN ATTACHED HERETO AS EXHIBIT "A". CREDITORS AND INTEREST HOLDERS ARE FURTHER URGED TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO UNDERSTAND THE PLAN MORE FULLY.

4.1     100% Plan: The Plan contemplates that secured creditors will be paid the full amount of their allowed claims.   The infusion of monies into the reorganized Debtor through additional capital contributions may be required.  Potential investors of Debtor may also infuse new capital. The infusion of monies into the reorganized Debtor through capital contributions may be required in order for debtor to continue in business.  In order for debtor to continue in business, potential investors of the Debtor may also infuse new capital.   Any new monies will also be used as operating reserves to cover any operating shortfalls which the Debtor may encounter.

POTENTIAL INVESTORS MAY BE ALLOWED TO ACQUIRE A PERCENTAGE OF INTEREST OR A PERCENTAGE THEREOF, IN THE REORGANIZED DEBTOR.

These proceeds, in conjunction with the Property's revenues and inherent future appreciation, will provide the necessary funds to Debtor to pay creditors under the Plan.

4.2  Segregation of Classes: The Plan further proposes to segregate the creditors and interest

10

holders of the Debtor into separate classes. Of these classes, allowed administrative and priority claimants including priority tax claimants, but exclusive of those referenced in 11 U.S.C. Section 507(a)(8) will receive payments of 100% of their respective claims, in cash over time, with a market rate of interest, as set forth in the Plan.

The Debtor may propose to separately classify some unsecured creditors from deficiency claims of other creditors.

Generally, all Administrative Claims will be paid in full in cash as stated in the Plan. The Debtor shall retain the property and the creditors shall be paid in accordance with modifications of their applicable loan and security documents as set forth herein and in the Plan of Reorganization.

4.3 <u>Value of Secured Claims</u>: Under the Plan, the Debtor proposes to allow the secured creditors to retain their liens in the amount equal to the lesser of the value of the property or the full amount of their claim on the Petition Date.

ANY STIPULATION ENTERED INTO BETWEEN THE SECURED CREDITORS AND THE DEBTOR SHALL SUPERSEDE ANY TREATMENT OF CREDITORS THAT MAY BE SET FORTH IN THE DEBTOR'S PLAN.

All other previously secured creditors on the Debtor's real properties, if any, unless a stipulation is reached, will have their respective liens which encumber the property removed and their claims treated as deficiency claims, paid as set forth in the Plan.

4.4 <u>Cash Collateral Litigation</u>: There is no cash collateral litigation.

4.5 <u>Description of Assets - Values</u>: The major asset of the debtor is the goodwill, customers and brewery located at 3850 E. 44th Street, Tucson, AZ 85713. Debtor does sell "Nimbus" memorabilia as shown on Exhibit "C" attached hereto.

4.6 <u>Anticipated Future of Debtor</u>: Debtor believes business will continue to grow as debtor enters new markets.

4.7 <u>Source of Information</u>: The source of the information presented is James Counts, manager of the Debtor.

4.8 <u>Condition and Performance of the Debtor in Chapter 11</u>: Debtor maintains the assets necessary to continue to operate.

11

4.9 <u>Information Regarding Claims Against Estate</u>: Debtor has claims against New Way Tucson Restaurant, L.L.C. and DonBrandon, L.L.C. in excess of $100,000.00

4.10 <u>Liquidation Analysis</u>:   A liquidation analysis valuing assets of the debtor in a Chapter 7 is attached as **Exhibit "C"**.  This liquidation analysis will include any uncollected account receivables.

4.11 <u>Future Management of the Debtor</u>: The Debtor will be managed by James Counts, post-confirmation.

4.12 <u>Non-Bankruptcy Litigation</u>: Debtor anticipates some bankruptcy litigation will occur after confirmation of the Plan of Reorganization to allow debtor to collect monies owed to it and to utilize those funds to pay creditors and operate.

4.13 <u>Avoidable Transfers</u>:  Debtor is unaware of any transfers of property of this estate which would allow an avoidable transfer action.

4.14 <u>Accounts Receivable</u>: Debtor collects accounts receivable on a regular ordinary course of business..

4.15 <u>Presence of Affiliates</u>: There are no affiliates.

4.16 <u>New Capital Contribution</u>: Debtor does not believe a new capital contribution is required as allowed claims are being paid in full.


***SECTION V***

*Classification and Treatment of Claims and Interests*

1.      *Claim Amounts*: Because certain claims against the Debtor  may be unknown or of undetermined amounts, the amounts of claims specified in this Disclosure Statement reflect only the Debtor's best estimate at this time of the amount due.   In addition, the amounts of the claims specified in this Disclosure Statement do not include, for example, claims arising from the rejection of certain executory contracts and other contingent or unliquidated claims arising against the debtor.

2.      *Effective Date of the Plan*: The "Effective Date" of the Plan  is important in determining when performance of many of the Debtor's obligations under the Plan is due.  The Effective Date is defined in the Plan as the first business day following the later of the following day;

12

(i) the date on which the Order confirming the Plan (the "Confirmation Order") becomes final and non-appealable with no appeal then pending; or

(ii) 60 days after the date of the Confirmation Order for unsecured claims; and

(iii) 30 days after the date of the Confirmation Order for secured claims.

3. *Classification*: The Plan divides claims against the Debtor into multiple separate classes that the Debtor asserts are in accordance with the Bankruptcy Code. Unless otherwise expressly stated in the Plan, distributions to holders of allowed claims are in full satisfaction of their allowed claims. All claims against the Debtor arising prior to confirmation will be discharged by performance of the Plan on the Effective Date to the extent that such claims are dischargeable under the Bankruptcy Code Section 1141(d). For the purposes of the Plan, claims are classified and treated as follows:

5.1 <u>Class One - Administrative Claims</u>.

A. <u>Classification</u>: Class One consists of all claims for the cost of administration of the Debtor's bankruptcy estate. Included in this class are all claims for administrative expenses entitled to priority under Bankruptcy Code §507(A)(1), such as professional fees and costs, as approved by the Bankruptcy Court of the attorneys, accountants, and other professional persons employed by the Debtor, and all actual and necessary expenses of operating the Debtor's business pursuant to Bankruptcy Code §503(b), including without limitation, all fees charged against the Debtor's business pursuant to Chapter 123 of Title 28, United States Code. <u>Debtor believes claims in this class may exceed $25,000.00.</u>

B. <u>Impairment</u>: Not impaired.

C. <u>Treatment</u>: The Plan provides for the payment in cash, in full, of all allowed Administrative Claims on the later of the Effective Date or the date upon which such Claims become Allowed Claims, or as otherwise ordered by the Bankruptcy Court. Class 1 claims will be paid from assets of the estate. The Debtor currently estimates that the Class 1 claims will total approximately $25,000.00 and may include post-petition administrative expenses. Such payments will reduce the amount of administrative expenses due on the Effective Date of the Plan unless otherwise provided for.

13

5.2     Class Two - Claims of Governmental Units

A.     Classification: Class Two claims consists of all allowed claims of the United States Internal Revenue Service ("IRS") and/or State of Arizona, Department of Revenue ("DOR") and/or the Department of Economic Security ("DES"), City of Tucson or other government agency which are entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code except ad valorem taxes.  Debtors are aware of Proofs of Claim filed by Arizona Department of Revenue in the amount of $37,116.20.

B.     Impairment: Class Two is impaired.

C.     Treatment: Each holder of a Class Two allowed claim shall retain its lien or claim, in accordance with Section 1129 of the Bankruptcy Code.   The claim shall bear simple interest at a fixed rate equal to that rate which would be required to be paid as of the Effective Date under Section 6621 and/or 6622 of the Internal Revenue Code, or such other interest rate as the Bankruptcy Court determines is sufficient to confer upon the tax claim a value as of the Effective Date equal to the principal amount of such claim.  The allowed claim shall be payable in 60 equal monthly installments of principal, along with accrued interest, in deferred cash payments over a period not to exceed five years from date of petition.   The first payment shall commence on the first day of the month immediately following the month of the Effective Date.  The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are usual and customary.

5.3     Class Three - Secured Ad Valorem Real Property Tax Claims

A.     Classification: Class Three shall consist of pre-petition allowed Ad Valorem Real Property Tax Claims of Pima County, AZ which are secured by liens on real property.  The Debtor is unaware of any claims in this class.

B.     Impairment: Class Three is impaired.

C.     Treatment: Each holder of a Class Three allowed claim shall retain its lien having an aggregate principal amount sufficient to satisfy, in accordance with Section 1129 of the Bankruptcy Code, the allowed claim.  Such claim shall bear simple interest at a statutory rate required to be paid as of the Effective Date, or such other interest rate as the Bankruptcy Court

14

determines is sufficient to confer upon the tax claim a value as of the Effective Date equal to the principal amount of such claim charged by Pima County or the statutory rate of interest. Payments shall be made in equal monthly installments of principal, along with accrued interest, in deferred cash payments over a period not to exceed five years from date of petition. The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are usual and customary for promissory notes.

5.4 Class 4 - Secured Statutory Claims of Pima County

A. Classification: Class Four shall consist of pre-petition allowed Secured Tax Claims of Pima County for personal property taxes. The Debtors estimate claims in this class in the approximate amount of $8,427.60 for tax years 2011 and 2012.

B. Impairment: Class Four is impaired.

C. Treatment: The holder of a Class Four allowed claim shall retain its lien having an aggregate principal amount sufficient to satisfy, in accordance with Section 1129 of the Bankruptcy Code, the allowed claim. Such claim shall bear simple interest at a statutory rate of 16% per annum required to be paid as of the Effective Date, or such other interest rate as the Bankruptcy Court determines is sufficient to confer upon the tax claim a value as of the Effective Date equal to the principal amount of such claim charged by Pima County or the statutory rate of interest. Payments shall be made in equal monthly installments of principal, along with accrued interest, in deferred cash payments over a period not to exceed five years from date of petition, with the first payment commencing on the first day of the month immediately following the month of the Effective Date. The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are required by law.

5.5 Class Five - Secured Claim of Rewards Network Establishment ("Rewards").

A. Classification: This claim consists of the allowed secured claim of Rewards to the extent of the value of the secured creditor's interest in the Debtor's interest in all inventory, accounts, chattel paper, equipment and general intangibles, all accessions, additions, replacements, and substitutions relating to any of the foregoing, all records of any kind relating to any of the foregoing and all proceeds relating to any of the foregoing (including insurance, general intangibles

15

and other accounts proceeds). This claim is evidenced by a promissory note and security agreement. The Debtor is aware of a proof of claim in this class in the amount of $49,405.74. Debtor believes the claim is not fully secured.

        B.     Impairment: Class Five is impaired.

        C.     Treatment: The Class Five allowed secured claim of Rewards shall continue to be paid according to the contract entered into by the parties.

    5.6    Class Six Secured Claim of BMT Leasing Inc. ("BMT")

        A.     Classification: This claim consists of the allowed secured claim of BMT to the extent of the value of the secured creditor's interest in the Debtor's interest in the equipment finance agreement. This claim is evidenced by an equipment finance agreement and UCC-1 filings. The Debtor is aware of a proof of claim in this class in the amount of $2,400.22.

        B.     Impairment: Class Six is impaired.

        C.     Treatment: The Class Six allowed secured claim of BMT shall be paid in equal monthly installments over sixty months at five (5%) percent interest per annum.

    5.7    Class Seven - Secured Claim of Nationwide Funding, LLC (" Nationwide").

        A.     Classification: This claim consists of the allowed secured claim of Nationwide to the extent of the value of the secured creditor's interest in the Debtor's interest in leased equipment under lease agreements 10-009724. This claim is evidenced by a lease agreement . Debtor estimates the claim in this class in the amount of $16,944.64. Debtor believes the claim is not fully secured.

        B.     Impairment: Class Seven is impaired.

        C.     Treatment: The Class Seven allowed secured claim of Nationwide shall be $$9,694.64 paid in equal monthly installments over sixty months at five (5%) percent interest per annum as a total payoff on the lease.

    5.8    Class Eight - Secured Claim of US Bancorp (" US Bancorp").

        A.     Classification: This claim consists of the allowed secured claim of US Bancorp to the extent of the value of the secured creditor's interest in the Debtor's interest in equipment under UCC-1 filings. This claim is evidenced by UCC-1 filings. Debtor estimates the

16

claim in this class in the amount of unknown.

        B.      Impairment: Class Eight is impaired.

        C.      Treatment: Debtor believes that the claim of US Bancorp has been satisfied and no monies are owed to Us Bancorp.  If US Bancorp is found to have a claim it shall be treated and paid according to the contract entered into by the parties.

    5.9     Class Nine - Secured Claim of AEL Financial LLC (" AEL").

        A.     Classification: This claim consists of the allowed secured claim of AEL to the extent of the value of the secured creditor's interest in the Debtor's interest in equipment under UCC-1 filings. This claim is evidenced by UCC-1 filings. Debtor estimates the claim in this class in the amount of unknown.

        B.      Impairment: Class Nine is impaired.

        C.      Treatment: Debtor believes that the claim of AEL has been satisfied and no monies are owed to AEL.  If AEL is found to have a claim it shall be treated and paid according to the contract entered into by the parties.

    5.10    Class Ten - Secured Claim of Corp Service Company (" Corp Service").

        A.     Classification: This claim consists of the allowed secured claim of Corp Service to the extent of the value of the secured creditor's interest in the Debtor's interest in equipment under UCC-1 filings. This claim is evidenced by UCC-1 filings. Debtor estimates the claim in this class in the amount of unknown.

        B.      Impairment: Class Ten is impaired.

        C.      Treatment: Debtor believes that the claim of Corp Service has been satisfied and no monies are owed to Corp Service.  If Corp Service is found to have a claim it shall be treated and paid according to the contract entered into by the parties.

    5.11    Class Eleven - Secured Claim of National City Commercial Cap (" National City").

        A.     Classification: This claim consists of the allowed secured claim of National City to the extent of the value of the secured creditor's interest in the Debtor's interest in equipment under UCC-1 filings. This claim is evidenced by UCC-1 filings. Debtor estimates the claim in this class in the amount of unknown.

17

B.     Impairment: Class Eleven is impaired.

C.     Treatment: Debtor believes that the claim of National City has been satisfied and no monies are owed to National City.  If National City is found to have a claim it shall be treated and paid according to the contract entered into by the parties.

5.12     Class Twelve - Unsecured Deficiency Claims and Unsecured Claims.

_____A.     Classification:  Class Twelve consists of all unsecured deficiency claims and unsecured claims against the debtor.  Debtor estimates claims in this class may exceed $105,000.00.

B.     Impairment: Class Twelve is impaired.

C.     Treatment: The Class Twelve claims shall be paid an amount equal to fifty percent (50 %) of the allowed amount of their claims at three percent (3 %) interest on the unpaid balance  in one hundred and twenty (120) equal monthly installments with the first payment due 60 days from the Effective Date. Any liens held by the Class Twelve creditors shall be null and void and removed as of the Effective Date.

5.13     Class Thirteen- Contingent, Unliquidated and Disputed Claims.

_____A.     Classification:  Class Thirteen consists of  all contingent, unliquidated and disputed claims.

B.     Impairment: Class Thirteen is impaired.

C.     Treatment: Class Thirteen creditors shall receive no distribution under the Plan.

5.14     Class Fourteen - Claims of Participating Investors.

_____A.     Classification:  Class Fourteen consists of the claims of participating investors.

B.     Impairment: Class Fourteen is impaired.

C.     Treatment:   Unless participating investors contribute substantial capital required to fund this Plan and/or make capital improvements to the subject property they will receive no percentage of the equity interest of the debtor and no distribution under the Plan.

5.15     Class Fifteen - Interest of Equity Holders.

_____A.     Classification:  Class Fifteen consists of the interest of the debtor.

18

B.    Impairment: Class Fifteen is not impaired.

C.    Treatment: The debtor shall be allowed to retain its current percentage of interest or a percentage thereof unless participating investors are required to contribute substantial capital required to fund this Plan and/or make capital improvements to the subject property.

# SECTION VI

### Post-Confirmation Management

The managing member of the Debtor post-confirmation will be James Counts.

# SECTION VII

### Income Tax Consequences of Reorganization

The Debtor has been advised by Eric Slocum Sparks, Esq. to obtain independent tax advice to determine the consequences of going forward under the Plan and retaining the Property hereunder. The Debtor has advised Eric Slocum Sparks, Esq. that outside tax counsel has been/or will be retained and/or consulted to assist in drafting, amending or revising the Plan as proposed.  The debtor and Eric Slocum Sparks, P.C. have been advised that the debtor can retain the property without significant adverse tax consequences.

7.1    *Disclaimer: The income tax consequences of the reorganization of the Debtor pursuant to this Plan will be different and will depend upon the Debtor's tax situation. Eric Slocum Sparks, P.C. is not advising the Debtor regarding the tax consequences of the reorganization of the Debtor and the Debtor will consult with its own tax advisor regarding the tax consequences of the reorganization of the Debtor according to the Plan.*

*ANY POTENTIAL PARTICIPATING INVESTORS ARE URGED TO CONSULT THEIR OWN ADVISORS AS TO THE OVERALL TAX IMPLICATIONS OF PARTICIPATION OR NON-PARTICIPATION UNDER THE PLAN.*

7.2    Consummation:  For purposes of Local Bankruptcy Rule 2015, and consistent with Bankruptcy Code Section 1001(2), consummation of the Plan shall occur upon the ① funding of the contributions due from participating investors hereunder if required ; and ② commencement of disbursements to Impaired creditors as provided in the Plan.

19

# SECTION VIII

*Feasibility*

As a condition to confirmation of a plan of reorganization, Section 1129(a)(11) of the Bankruptcy Code requires that the confirmation is not likely to be followed by a liquidation or the need for further financial reorganization, except as proposed in such plan.

The debtor sets out as **Exhibit D** its Anticipated Income and Expense and the Schedule of Sources and Uses of Cash.

THE FINANCIAL PROJECTIONS SET FORTH IN THIS DISCLOSURE STATEMENT REPRESENT A PREDICTION OF FUTURE EVENTS BASED ON CERTAIN ASSUMPTIONS OF THE DEBTOR. ANTICIPATED FUTURE EVENTS MAY OR MAY NOT OCCUR AND THE PROJECTIONS MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS WHICH WILL OCCUR. BECAUSE OF THE UNCERTAINTIES INHERENT IN PREDICTIONS OF FUTURE EVENTS, THE ACTUAL RESULTS OF OPERATIONS MAY WELL BE DIFFERENT FROM THOSE PREDICTED AND SUCH DIFFERENCES MAY BE MATERIAL AND ADVERSE.

THE FINANCIAL PROJECTIONS ARE INTENDED TO ASSESS THE FUTURE ASSETS, LIABILITIES, INCOME AND CASH FLOW AVAILABLE FOR DEBT SERVICING AND ARE NOT DESIGNED OR INTENDED TO BE USED FOR PURPOSES OF PROJECTING THE FUTURE VALUE OF THE DEBTOR'S INTERESTS OR DEBENTURES ISSUED BY OR ON BEHALF OF THE REORGANIZED DEBTOR.

The Debtor has made a variety of assumptions which have been the basis of its Plan of Reorganization. Those assumptions include (1) that by reducing expenses the debtor can remain profitable; and (2) that the economy in Arizona will slowly continue to improve to allow greater consummation of its products and (3) that debtor will retain a number of new distributors to market its products in a greater number of markets. These assumptions will be available to make debt service payments as proposed under the Plan. Actual operations of the business confirm these assumptions. Based on the cash flow projections prepared by the debtor, the debtor believes that the Plan satisfies the feasibility requirements of the Bankruptcy Code.

20

# SECTION IX

## *Liquidation Analysis*

The primary assets and only significant income-producing asset of the Debtor's estate is the commercial property located in Tucson, Arizona. The property is subject to and encumbered by the asserted liens and security interests held by the major secured creditors of the property.

In the event this case were converted to a case under Chapter 7 and the assets of the estate liquidated, these creditors would proceed to foreclose upon their interest in the property. A foreclosure of the property would eliminate any prospect of any payment to remaining unsecured and priority creditors. As a result, it is the debtor's opinion that all claimants are best served through implementation and effectuation of the Plan which provides for a significant , albeit limited, dividend on its claims. If the Plan of Reorganization is consummated, the Unsecured trade creditors and unsecured deficiency claims will be paid a substantial sum of monies, on a pro rata basis as set forth in the Plan. Creditors and other interested parties are urged to review the debtor's schedules and statement of affairs as filed with the United States Bankruptcy Clerk's Office (and as amended from time to time) for purposes of confirming the debtor's conclusions contained in this liquidations analysis, attached hereto as **Exhibit "C".**

# SECTION X

## *Acceptance and Confirmation*

10.1    <u>What is Necessary for Court Approval of a Plan</u>: Chapter 11 of the Bankruptcy Code permits the readjustment of secured debt, unsecured debt and equity interests. A Chapter 11 plan may provide less than full satisfaction of senior indebtedness and payment of junior indebtedness, and may even provide some return to equity owners absent full satisfaction of indebtedness, so long as no impaired class votes against the plan (except as provided below).

Even if an impaired class votes against the plan, implementation of the plan is still possible so long as the plan is fair and equitable and that class is afforded certain treatment defined by the Code. That certain treatment may be very broadly defined as giving a claimant the full value of his claim or interest. Such value is determined by the Court and balanced against the treatment afforded the dissenting class of creditors. If the latter is equal to or greater than the former, the Plan may be

21

confirmed over the dissent of that class, depending upon the treatment of junior claims and interests. In particular, senior claims must be satisfied in full prior to payment of junior claims or interests, unless the holders of senior claims agree to different treatment. This principle, commonly known as the "absolute priority rule", applies only in cases when a class of unsecured claims or equity interests is impaired and does not accept the plan. In that event, the absolute priority rule does not apply to all classes of unsecured claims and equity interests, but only to the dissenting class and classes junior to the dissenting class.

The exception to the absolute priority rule is that an existing Debtor can contribute money or property which is (1) new (fresh); (2) substantial; (3) necessary, and (4) not readily available from other sources.

In the event a class is unimpaired, it is automatically deemed to have accepted the plan. In this proposed Plan, Classes 2 through 14 will be impaired, as defined in §1124 of the Code, as the result of the Plan. All other classes will be unimpaired.

The Code states that if there is no dissenting class, the test for approval by the Court of a Chapter 11 plan (i.e., confirmation) is whether the plan is feasible and in the best interests of creditors and interest holders. In simple terms, a plan is in the best interests of creditors and interest holders if the plan will provide a better recovery to the creditors and interest holders than they would obtain if the Debtor were liquidated and the proceeds distributed in accordance with bankruptcy liquidation priorities. The Court, in considering this factor, need not consider any other alternative to the plan but liquidation.

In considering "feasibility", as mentioned earlier, the Bankruptcy Court is only required to determine whether the plan has a reasonable prospect of being accomplished. This entails determining the availability of cash for payments required at the effective date, and any other factor which might make it impossible for the reorganized Debtor to accomplish that which it proposes to accomplish in he plan.

In addition, in order to confirm a plan, the Court must find that the plan was proposed in good faith and that the plan and the Debtor are in compliance with the applicable provisions of Chapter 11. Finally, similar to the requirement that the Court find the plan to be feasible, the Court

22

must find that liquidation or further reorganization of the reorganized Debtor is not likely to occur after implementation of the plan.

The determination by the Court that a plan is fair, equitable and feasible occurs at the confirmation hearing after a plan has been accepted. The Court's judgment on these matter does not constitute an expression of the Court's opinion as to whether the plan is a good one, nor does it constitute an opinion by the Court regarding any debt or equity interest or securities issued to creditors under the plan.

10.2    Alternatives to the Plan:  Although this Disclosure Statement is intended to provide information to assist in the formation of a judgment as to whether to vote for or against this proposed Plan, and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief reminder of the alternative to the Plan is in order. This alternative includes the probable liquidation of the Debtor through conversion of the case to one under Chapter 7.  The Debtor believes the Plan to be in the best interests of the creditors and the interest holders.  In arriving at this conclusion, the Debtor emphasizes that the debtor has liabilities in excess of the fair market value of its assets (refer to debtor's schedules).   Moreover, the principal assets of the debtor are fully encumbered and the debts which are secured by the debtor's assets exceed the value of those assets.  Consequently, the unsecured creditors of the debtor would likely receive smaller distributions under a Chapter 7 liquidation.  THE DEBTOR HAS ATTEMPTED TO SET FORTH THE LIKELY LIQUIDATION ALTERNATIVE TO ITS PROPOSED PLAN.  THE DEBTOR MUST CAUTION CREDITORS  HOWEVER, THAT A VOTE MUST BE FOR OR AGAINST THE PLAN.  THE VOTE ON THE PLAN DOES NOT INCLUDE A VOTE ON THE LIKELY LIQUIDATION ALTERNATIVE TO THE PLAN.  THERE IS NO ASSURANCE THAT THE LIKELY LIQUIDATION ALTERNATIVE WILL, IN FACT, FOLLOW IF THE PLAN FAILS ACCEPTANCE.  IF YOU BELIEVE THE LIQUIDATION ALTERNATIVE IS PREFERABLE TO THE PLAN AND YOU WISH TO URGE IT UPON THE COURT, YOU SHOULD CONSULT COUNSEL.

10.3    Specific Consideration in Voting:  All of the foregoing gives rise to the following implications and risks concerning the Plan.

23

While the Plan provides for certain payments, such payments will apply only to allowed claims and certain interests. Under the Bankruptcy Code, a claim may not be paid until it is "allowed". A claim will be allowed in the absence of an objection. A claim to which an objection has been filed will be heard by the Court at a regular evidentiary hearing and will be allowed in full, in part, or disallowed. While the Debtor will bear the principal responsibility for claim objections, any interested party may file claim objections. Accordingly, payment on all claims may be delayed until objections to such claims are ultimately settled.

10.4  <u>Risk Factors</u>.  For classes of claims which do not receive cash on the Effective Date, there are certain risks inherent in accepting the Plan, including the absence of absolute certainty of ultimate payment.

10.5  <u>Disclosure Required by the Code</u>:  The Code requires disclosure of certain facts as follows:

1)  there are no payments or promises made of the kind specified in Section 1129(a)(4)(A) of the Code which have not previously been disclosed to the Court;

2)  the ownership of the Reorganized Debtor will not be affected by the Plan.

## SECTION XI

*Other Provisions of the Plan*

11.1  <u>Retention of Jurisdiction</u>:  The Bankruptcy Court shall retain exclusive jurisdiction over this case to supervise the Plan, to hear, if applicable law provides, and to determine, among other things, the following matters:

1)  any and all objections to the allowance of claims or interests except as provided in the Plan;

2)  any and all applications for payment for fees from the Debtor made by attorneys and other professional pursuant to Sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid by the Debtor under Section 327 of the Bankruptcy Code, and any objections thereto;

3)  any and all pending applications for rejection, the assumption, or assignment

24

as the case may be of unexpired leases and executory contracts;

    4)  any and all motions, applications, adversary proceedings and contested or litigated matters properly before the Bankruptcy Court;

    5)  modifications of this Plan;

    6)  all matters relating to the implementation or consummation of this Plan;

    7)  any and all suits or actions brought for collection or recoupment of debts or other obligations owed by defaulted partners to the Debtor.

  11.2  <u>Retention of Causes of Action</u>: The Debtor shall retain all claims or causes of action which it has as of the Confirmation Date, the powers of the debtor-in-possession for purposes of prosecuting claims and causes of action arising under the Bankruptcy Code, and full authority to pursue, compromise, and resolve all such claims and causes of action unless the Court has granted any such right to a creditor of this estate.

  11.3  <u>Retention or Rejection of Executory Contracts and Leases</u>:  The Plan provides that pursuant to Section 365 of the Bankruptcy Code, the Debtor assumes all executory contracts and unexpired leases to which they are a party, including leases specifically provided prior to the hearing on the Disclosure Statement, if any.

  11.4  <u>Amendments to Plan</u>:  The Plan may be altered, amended, or modified by the proponents before the Confirmation Date, in the manner provided for by Section 1127 of the Bankruptcy Code or otherwise provided for by law.  The Plan may also be altered, amended, or modified by the proponents after the Effective Date in accordance with the Bankruptcy Code and applicable law.  A holder of a claim or interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected as the case may be the Plan as modified unless the modification detrimentally effects the holder of such claim or interest without the prior consent thereof.

  11.5  <u>Offer, Issuance and Resale of Plan Securities</u>:  The offer and issuance of Plan Securities by any Debtor which constitutes securities under the Securities Act of 1933, as amended (the "1933 Act") or applicable state securities laws have not been registered under the 1933 Act or such state securities laws, pursuant to the exemption therefrom provided by Section 1145 of the Bankruptcy Code.

The Plan Securities will bear the following legend:

> "The offer and sale of this Plan Security has not been registered under the Securities Act of 1933, as amended, or qualified under applicable state securities laws, and this Plan Security may not be offered, sold or transferred in the absence of such registration or an exemption therefrom under such laws."

Resale or other transfer of a Plan Security by a creditor who has acquired it pursuant to the Plan, may or may not be exempt from the registration requirements of Section 5 of the Securities Act of 1933 and any applicable state securities laws or Blue Sky Laws.

BY ITS RECEIPT OF A PLAN SECURITY, EACH RECIPIENT SHALL BE DEEMED TO ACKNOWLEDGE THAT IT IS RESPONSIBLE FOR ITS COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS. EACH CREDITOR SHOULD CONSULT HIS OR HER OWN ATTORNEY AS TO WHETHER ANY RESALE OF A PLAN SECURITY REQUIRES REGISTRATION OF SUCH SECURITY UNDER THE SECURITIES ACT OF 1933 OR AN APPLICABLE STATE SECURITIES LAW.

11.6    Provision for Filing Reports and Payments of Fees to the Office of the United States Trustee: The Debtor shall timely file all quarterly reports and post-confirmation reports and shall pay all fees to the United States Trustee as required by law and will incorporate such language into the order confirming the Debtor's Plan of Reorganization.

## SECTION XII

*Recommendation of Debtor*

The Debtor recommends that the Plan of Reorganization be approved in light of the alternative that only one secured creditor is likely to be paid a significant portion of their claim. The Debtor is of the opinion that the Plan approval is in the best interest of all creditors.

///

///

///

///

///

///

26

### *CONCLUSION*

The materials provided in this Disclosure Statement are intended to assist you in voting on the Plan in an informed fashion. If the Plan is confirmed, you will be bound by its terms. Therefore, you are urged to review this material in order to make an informed vote on the Plan.

DATED:        December 18, 2012

LAW OFFICES OF
ERIC SLOCUM SPARKS, P.C.

/s/ Sparks AZBAR #11726
Eric Slocum Sparks
Attorney for Debtor

Copies of the foregoing
mailed December 18, 2012 to:

United States Trustee
230 N. First Ave. #204
Phoenix, AZ 85003

Isaac M. Gabriel, Esq.
Quarles & Brady, LLP
Renaissance One
Two N. Central Ave.
Phoenix, AZ 85004
Attorney for Rewards Network

Grant Winston, Esq.
Deputy County Attorney
Pima County Attorney's Office
32 N. Stone, #2100
Tucson, AZ 85701
Attorney for Pima County

Gregory E. Good, Esq.
Good Law, P.C.
3430 E. Sunrise Dr. #170
Tucson, AZ 85718
Attorney for Login, Inc.

/s/ A. Court-Sanchez

Case 4:12-bk-08122-EWH    Doc 75    Filed 12/18/12    Entered 12/18/12 15:22:25    Desc
Main Document    Page 32 of 32